# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ELISHA R. WHITE, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-16-245-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
|       Defendant. | ) |

## OPINION AND ORDER

The claimant Elisha R. White requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was thirty-nine years old at the time of the most recent administrative hearing (Tr. 131, 967). She completed the eleventh grade, and has no past relevant work (Tr. 185, 957). The claimant alleges that she has been unable to work since October 1, 2010, due to liver problems, knee problems, and cervical cancer (Tr. 184).

## Procedural History

On October 29, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated November 16, 2012 (Tr. 10-19). The Appeals Council denied review, but this Court reversed in Case No. CIV-14-080-RAW-KEW, and remanded with instructions to properly consider the opinion of one of the state reviewing physician opinions in the record. On remand, ALJ McClain held a second administrative hearing and again determined the claimant was not disabled in a written opinion dated April 5, 2016 (Tr. 946-959). The claimant did not file written exceptions with the Appeals Council, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work, *i. e.*, she could lift/carry ten pounds frequently and occasionally, stand/walk at least two hours in an eight-hour workday, and sit at least six hours in an eight-hour workday, all with normal breaks. He further determined that she could perform simple, repetitive tasks and relate to supervisors and coworkers only superficially, but that she could not work with the general public (Tr. 950-951). The ALJ then concluded that although the claimant had no past relevant work to return to, she was nevertheless not disabled because there was work that she could perform in the national economy, *e. g.*, machine operator and circuit board assembly (Tr. 957-958).

**Review**

The claimant contends that the ALJ erred, again, by failing to properly assess her mental impairments based on the state reviewing physician opinion in the record. The Court agrees, and the decision of the Commissioner must therefore be reversed.

The ALJ found that the claimant had the severe impairments of history of cervical cancer with chemotherapy and radiation leaving her with neuropathy of the lower extremities, history of knee pain and cirrhosis, anxiety, and depression (Tr. 949). The relevant medical records as to the claimant's mental impairments reveal that she received treatment from Green Country Behavioral Health Services beginning in June 2015 (Tr. 1129-1146). There, she was assessed with major depressive disorder, single episode, severe, with no psychosis, as well as anxiety not otherwise specified (Tr. 1129). A

treatment plan was put into place, and notes reflect the claimant was coping "better," but that she had anxiety in the waiting room and had to wait outside on at least one occasion (Tr. 1133).

Dr. Kathleen Ward, Ph.D., performed a consultative mental status examination of the claimant on January 26, 2011 (Tr. 650-654). Dr. Ward noted the claimant's history of substance abuse, that her thought processes were vague but not disorganized, that she was oriented x3, and that she had minor deficits in social judgment (Tr. 652). She concluded that the claimant might be incompetent to handle any funds awarded, and noted "perhaps emergent and very mild memory issues" that had some possible connection to drug use (Tr. 652). She assessed the claimant with polysubstance dependence, and depression not otherwise specified (Tr. 653).

On April 19, 2011, state reviewing physician Phillip Massad, Ph.D., completed a Psychiatric Review Technique form, and found that the claimant's mental impairments consisted of affective disorders and substance addiction disorders, and that she was mildly impaired in the functional categories of activities of daily living and maintaining social functioning, and moderately impaired in the category of maintaining concentration, persistence, or pace (Tr. 663-673). Dr. Massad then stated that the claimant could do simple routine work (Tr. 675). Dr. Massad also completed a Mental RFC Assessment and found in the area referred to as "Section I" that the claimant was markedly limited in the typical three categories of ability to understand and remember detailed instructions, to carry out detailed instructions, and to interact appropriately with the general public (Tr. 677-678). In the written comments section ("Section III"), Dr. Massad wrote that the claimant

could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, and could adapt to a work situation, but could not relate to the general public (Tr. 679). These findings were affirmed on review in an unsigned, undated form (Tr. 835).

At the administrative hearing, the ALJ elicited testimony from a VE to determine if there were jobs a hypothetical person could perform with the following limitations:

> . . . limited to sedentary work as described by the Commissioner, that is can occasionally lift and carry ten pounds, frequently lift and carry up to ten pounds; stand and/or walk at least two hours out of an eight-hour workday, and sit at least six hours all with normal breaks. Further assume the individual is limited to simple repetitive tasks; can relate to supervisors and coworkers only superficially and not work with the general public.

(Tr. 977). The VE identified that the claimant could perform the jobs of machine operator, DICOT § 673.685-042, and circuit board assembly, DICOT § 726.684-110 (Tr. 978). There was some confusion as to the DICOT number for the circuit board assembly job identified (Tr. 979-980), so the claimant's representative asked the VE to identify another job. In response, the VE identified the job of production assembler, DICOT § 715.687-094.

In his written opinion on remand, the ALJ summarized the claimant's hearing testimony and the medical evidence in the record. He noted this Court's findings that he had failed to appropriately address the apparent contradiction between his assessment in Section I that the claimant had a marked limitation in understanding, remember, and carrying out detailed instructions, and in his RFC assessment in Section III. ALJ McClain then proceeded to assert that Dr. Massad had limited the claimant with regard to detailed tasks by finding that she could only perform simple tasks, relate to supervisors and

-6-

coworkers superficially, and not work with the public, essentially restating Dr. Massad's assessment without finding *how* the Section III accounted for her limitations with regard to detailed work. He then assigned Dr. Massad's opinion great weight (Tr. 956). The ALJ determined the claimant's RFC as set forth above, then adopted the VE's testimony that she could perform the jobs of machine operator and circuit board assembly (Tr. 950-951, 958). The ALJ did not reference the third job of production assembler in his written opinion.

The claimant argues that the ALJ failed to properly assess Dr. Massad's opinion, despite giving it significant weight. Specifically, she contends that ALJ failed to account for Dr. Massad's finding that the claimant was markedly limited in her ability to understand, remember, and carry out detailed instructions because his Section III RFC failed to account for the level of detail the claimant could perform. In support, she cites the Social Security Administration's Program Operations Manual System (POMS) DI 24510.063, which refers to the form completed by Dr. Massad and indicates that "markedly limited" is appropriate "when the evidence supports the conclusion that the individual cannot usefully perform or sustain the activity." *See* Docket No. 16, Ex. 1.

Social Security Ruling 96–6p instructs that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4 (July 2, 1996). These opinions are to be treated as medical opinions from non-examining sources. *Id.* at *2. Although the ALJ is not bound by a state agency physician's determination, he cannot ignore it and must explain the weight given to the opinion in his

decision. *Id. See also Valdez v. Barnhart,* 62 Fed. Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it.") [unpublished opinion], *citing* 20 C.F.R. § 416.927(f)(2)(ii). Here, although the ALJ's RFC assessment found the claimant could perform simple, repetitive tasks and only have superficial contact with co-workers and supervisors, and no contact with the general public, it did not *account for* Dr. Massad's findings related to the claimant's ability to perform detailed work (Tr. 24-25). The ALJ, without analysis, simply asserted that Dr. Massad's Section III RFC accounted for his Section I statements regarding detailed work. *See, e.g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

The government asserts that the findings of marked limitations contained in the first section of the mental RFC assessment are merely a "worksheet" and not Dr. Massad's ultimate opinion. *See* Social Security Administration Program Operations Manual System (POMS) DI 24510.060, *Mental Residual Functional Capacity Assessment* ("Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment. . . . Section III – Functional Capacity Assessment is for recording the mental RFC determination [and is] the actual mental RFC assessment [as] recorded."). The Commissioner thus argues that

the findings of marked limitations are not necessary for inclusion in the ultimate RFC assessment because this position has been adopted in at least one unpublished opinion by the Tenth Circuit. *See Lee v. Colvin*, 631 Fed. Appx. 538, 541 (10th Cir. 2015). *See also Nelson v. Colvin*, 655 Fed. Appx. 626, 628-629 (10th Cir. 2016) (finding the Section III narrative adequately captured the limitations found in Section I, and the ALJ's limitation of the claimant to unskilled work accounted for the marked limitations). However, the Tenth Circuit has found that "this does not mean that an ALJ can turn a blind eye to moderate Section I limitations. . . . [I]f a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or *if it contradicts limitations marked in Section I*, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Carver v. Colvin,* 600 Fed. Appx. 616, 619 (10th Cir. 2015). *See also Guinn v. Berryhill*, 2018 WL 626247, at *3 (D. N.M. Jan. 30. 2018) ("None of these cases stands for the proposition that an ALJ may ignore Section I findings. Such argument is not substantially justified."); *Silva v. Colvin*, 203 F. Supp. 3d 1153, 1163-1164 (D. N.M. 2016 ("[T]he Court has surveyed the cases from our circuit that expressly address the distinction between Section I and Section III. If read in a vacuum, *Smith*[ *v. Colvin*, 821 F.3d 1264 (10th Cir. 2016)] and *Sullivan*[ *v. Colvin*, 519 Fed. Appx. 985 (10th Cir. 2013)] could be interpreted in the Commissioner's favor, but the others could not. . . . While some of these cases suggest that an ALJ may rely exclusively on the Section III findings, they do so with an important caveat: the Section III findings must adequately account for the Section I findings."). And here, the limitations were marked, not moderate, which bolsters the claimant's argument even further.

The Commissioner next contends that the jobs identified at step five nonetheless account for any inability to understand, remember, and carry out detailed instructions. The Court, however, finds that the jobs identified *do not* account for those limitations with regard to the reasoning level requirements. The jobs of machine operator, DICOT § 673.685-042, and circuit board assembly, DICOT § 726.684-110, both have a reasoning level of 2, which requires a worker to "[a]pply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions" [emphasis added]. The reasoning level best identifies the level of simplicity (or, conversely, complexity) associated with a job. *See Cooper v. Barnhart,* 2004 WL 2381515, at *4 (N.D. Okla. Oct. 15, 2004) ("The reasoning level, as identified by Plaintiff, appears more similar to whether or not a claimant has a limitation to performing only simple tasks.") [citations omitted]. If a claimant is limited to simple, repetitive tasks, it stands to reason that a job requiring the ability to understand and carry out detailed but uninvolved written or oral instructions would create a conflict. *See McKinnon v. Astrue,* 2010 WL 3190621, at *5 (D. Colo. Aug. 12, 2010); *Allen v. Barnhart,* 2003 WL 22159050, at *10 (N.D. Cal. Aug. 28, 2003) (examining the requirements of the GED reasoning level of 2 and finding that "[t]he need to follow 'detailed' and 'involved' instructions exceeds the ALJ's limitation of plaintiff to 'simple, routine tasks.' Such instructions are not simple and uncomplicated, or limited to one or two steps."). "[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary [of Occupational Titles] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel,* 196 F.3d 1084, 1091 (10th Cir. 1999). *See also Krueger*

*v. Astrue,* 337 Fed. Appx. 758, 760–762 (10th Cir. 2009) (reversing and remanding in part because the ALJ failed to resolve a conflict between VE's testimony and DOT job descriptions); *Poppa v. Astrue,* 569 F.3d 1167, 1173 (10th Cir. 2009) (noting that SSR 00–4p "requires that an ALJ must inquire about and resolve any conflicts between a [VE's] testimony regarding a job and the description of that job in the [DOT]"); *Hackett v. Barnhart,* 395 F.3d 1168, 1175 (10th Cir. 2005) (applying *Haddock* to nonexertional limitations). Furthermore, "[t]he [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. The ALJ did neither in this case.

The Commissioner nevertheless argues that the law is unsettled and does not require reversal in this case because GED levels are related to the claimant's education level and background. *Anderson v. Colvin*, 514 Fed. Appx. 756, 764 (10th Cir. 2013) ("GED does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job, broken into the divisions of Reasoning Development, Mathematical Development and Language Development."); *Mounts v. Astrue*, 479 Fed. Appx. 860, 868 (10th Cir. 2012) ("Job descriptions in the [DOT] contain several elements required to perform a specific job, including a claimant's GED, which is the level of formal and informal education required to perform a specific job."). As such, the Commissioner points to a number of District Court cases described as the "better-reasoned line of authority" because they refer to the DOT definition of these reasoning levels. *See, inter alia*, *Pacheco v. Colvin*, 83 F. Supp. 3d 1157, 1167 (D. Colo. 2015); *Owen v. Colvin*, 2015 WL 1490947, at *5 (D. Utah March

30, 2015). However, the Court finds that these cases, on their facts, are distinguishable from the present case in that they either determined harmless error because other jobs had been identified (which is *not* the absence of error), or referred to illiteracy or a different level of reasoning than the limitation to simple, repetitive, and routine tasks that is present in this case. Furthermore, the Court notes the Commissioner's reference to *Rom v. Colvin*, 2016 WL 3528059, at *3 (N.D. Okla. June 23, 2016), in which the United States Magistrate Judge found that "[t]he vocational expert, not the court, has the expertise to interpret the information in the DOT," *citing Segovia v. Astrue*, 226 Fed. Appx. 801, 804 (10th Cir. 2007). But here, the ALJ failed to ask the VE to reconcile this conflict or clarify how the DOT could be applied to the claimant's mental limitations, and the ALJ therefore committed reversible error in violation of this Circuit's holding in *Haddock*. *See also Krueger v. Astrue*, 337 Fed. Appx. 758, 760–762 (10th Cir. 2009) (reversing and remanding in part because ALJ failed to resolve conflict between VE's testimony and DOT job descriptions); *Hackett*, 395 F.3d at 1175 (applying *Haddock* to nonexertional limitations); *Poppa*, 569 F.3d at 1173 (noting that SSR 00–4p "requires that an ALJ must inquire about and resolve any conflicts between a [VE's] testimony regarding a job and the description of that job in the [DOT]"). In the Tenth Circuit, this apparent inconsistency is reversible error. *See Hackett*, 395 F.3d at 1176 (finding a limitation to simple and routine work tasks "inconsistent with the demands of level-three reasoning," and reversing "to allow the ALJ to address the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE."). *See also Ward v Colvin*, 2015 WL 9438272, at *3

(W.D. Okla. Sept. 17, 2015) (slip op.) ("The Court declines to find, as urged by the Commissioner, that to the extent GED reasoning levels are not specific mental or skill requirements, they can be disregarded when addressing the mental demands of jobs listed in the DOT.").

Although the unresolved conflict as to the claimant's mental limitations would have been harmless error if the ALJ had identified in his opinion other jobs that did not pose a conflict, it is not harmless here because the only two jobs identified had reasoning levels of 2. *See Stokes v. Astrue,* 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding that any error on whether claimant could perform jobs was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country."). The Commissioner nevertheless asserts that harmless error exists because the VE did identify a third job at the administrative hearing, which had a reasoning level of 1. "However, the ALJ did not state in his decision that this was a job that plaintiff could perform. An ALJ's decision should be evaluated based solely on the reasons stated in the decision." *Sterling v. Astrue*, 2008 WL 45415, at *8 (D. Kan. Jan. 2, 2008). Accordingly, the Court declines to adopt the Commissioner's post hoc rationalization because the third job was not considered by the ALJ. *Cf. Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) ("[I]t nevertheless may be appropriate to supply a missing finding under the rubric of harmless error in the right exceptional circumstance, *i. e.*, where, based on material the ALJ *did at least consider* (just not properly), we could

confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.").

For the reasons set forth above, the Court concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for proper analysis of the medical opinions of record. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 24th day of September, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**